2000 OK 15

STATE of Oklahoma ex rel OKLAHOMA BAR ASSOCIATION, Complainant,

v.

Charles A. HOPKINS, Respondent.

No. SCBD–4419.

Supreme Court of Oklahoma.

Feb. 29, 2000.

Janis Hubbard, Assistant General Counsel, Oklahoma Bar Association, P.O. Box 53036, Oklahoma City, Oklahoma, Attorney for the Complainant.

Charles A. Hopkins, Respondent, Oklahoma City, Oklahoma, Pro Se.

**OPINION**

WATT, J.:

¶1 On January 29, 1999, the Oklahoma Bar Association filed a complaint against Respondent alleging four counts of professional misconduct. On March 1, 1999, an amended complaint was filed which alleged an additional seven counts of professional misconduct by Respondent.

¶2 On February 18, 1999, Respondent was personally served an alias subpoena duces tecum requiring that he appear at the Bar Center for a deposition. While Respondent appeared at the deposition, he did not bring with him any of the documents that the subpoena duces tecum required him to produce. Soon after the deposition commenced,

Respondent chose to terminate the deposition and stated that he didn't have the records available to him and therefore he couldn't refresh his recollection without having the materials in front of him.

¶ 3 On March 23, 1999, complainant filed a motion to deem allegations admitted. On March 29, 1999, a hearing on the merits was set at which time the motion to deem allegations admitted was presented to the trial panel. The motion was reserved for future consideration and complainant proceeded to present the testimony of eleven witnesses. At the conclusion of the first day of hearing on the merits, the hearing was continued to April 30, 1999.

¶ 4 On April 30, 1999, Respondent did not appear for the hearing. The trial panel continued it to May 26, 1999, at which time Respondent did appear and the complainant presented additional testimony including that of Respondent, Charles Hopkins. It was at this hearing that the trial panel sustained the complainant's motion to deem allegations admitted.

### THE JESSIE LOVE GRIEVANCE

■ ¶ 5 Respondent was retained to represent Mr. Jesse Love in a guardianship case and an adoption case. Respondent was paid three checks totaling $1,300 in attorney's fees between June 7, 1995 and February 7, 1996. Respondent failed to return Mr. Love's telephone calls and failed to perform the work for which he was hired.

¶ 6 On February 24, 1998, the Office of the General Counsel mailed a letter to Respondent at his current roster address requesting him to communicate with Mr. Love within two weeks about his allegations. Respondent failed to respond.

¶ 7 On March 24, 1998, the Bar Association mailed a letter to Respondent requesting him to communicate with Mr. Love within five days about the allegations. Respondent failed to respond.

¶ 8 In accordance with Rule 5.2, Rules Governing Disciplinary Proceedings, "RGDP", on May 19, 1998, the Bar Association mailed a letter to Respondent advising him again of the grievance and further advising him that he was required to make a full and fair disclosure to the Bar Association of all the facts and circumstances within 20 days. This letter was not returned and Respondent failed to file a written response to the grievance.

¶ 9 On June 15, 1998, the Bar Association mailed by certified mail, return receipt requested, a second letter requesting Respondent to respond within five days. Respondent failed to respond to all requests of the Bar Association and violated the mandatory provisions of Rule 8.1(b), Oklahoma Rules of Professional Conduct, "ORPC", and Rule 5.2, RGDP.

### THE BILLIE WHITFIELD GRIEVANCE

■ ¶ 10 On April 7, 1998, the General Counsel's office received a grievance from Ms. Billie Whitfield against Respondent in which she alleged that Respondent neglected her divorce case. She paid Respondent $250 in attorney's fees in June, 1997. He neglected to return her telephone calls and failed to perform the work for which he had been hired.

¶ 11 The Bar Association notified Respondent of the Whitfield grievance. As in the Love matter, Respondent failed to comply with the mandatory provisions of Rule 8.1(b), ORPC, and Rule 5.2, RGDP.

¶ 12 Respondent was personally served with a subpoena duces tecum requiring that he appear at the Bar Center on August 7, 1998 to discuss this matter and the Jesse Love matter. Respondent did appear but he was unprepared for the meeting, he did not bring with him the necessary records, and he did not provide the records later as he had promised.

### THE STELLA ROSS GRIEVANCE

¶ 13 On September 17, 1998, Ms. Stella Ross registered a grievance against Respondent alleging neglect after having retained Respondent to represent her in a divorce case and paying a total of $500 in attorney's fees between December, 1997 and February, 1998. Respondent failed to respond to Ms. Ross' telephone calls and failed to perform the work for which he was hired.

¶ 14  Pursuant to Rule 5.2, RGDP, the Bar Association notified Respondent of the Ross grievance and as in the previously mentioned grievances, Respondent repeatedly failed to provide a response to the Bar Association.

## THE KENNETH POWELL GRIEVANCE

¶ 15  On September 24, 1998, the Bar Association received a written grievance from Kenneth Powell alleging Respondent neglected his child support and visitation case.  Respondent was paid $675 in attorney's fees on June 11, 1996.  Respondent failed to respond to Mr. Powell's telephone calls and failed to perform the work for which he was hired.

¶ 16  As in the aforementioned grievances, the Bar Association notified Respondent on several occasions of Mr. Powell's grievance. Respondent again failed to file a written response to the grievance within the time allowed by Rule 8.1(b), ORPC, and Rule 5.2, RGDP.

## THE LEONARD LONG II GRIEVANCE

¶ 17  On September 18, 1998, the Bar Association received a written grievance from Mr. Leonard Long II against Respondent for neglect in an award for attorney fees in his divorce case.  In March of 1997, Mr. Long hired Respondent and paid him $1,025 in attorneys fees to represent him in a divorce case which lasted until January 1998. In June of 1998, Mr. Long hired Respondent to represent him in a bankruptcy case.  In July 1998, Mr. Long was served with papers suing him for his ex-wife's attorneys fees in the amount of $4,565.  Respondent told Mr. Long not to worry about it because he would take care of it.  Shortly thereafter in August 1998, Mr. Long discovered that judgment had been entered against him for his ex-wife's attorneys fees because Respondent failed to appear.  Respondent failed to respond to Mr. Powell's telephone calls and failed to perform the work for which he was hired and failed to communicate with his client.

¶ 18  On September 30, 1998, the Bar Association mailed a letter to Respondent and asked him to respond to Mr. Long's allegations.  Respondent failed to file a response as in the grievances before.

## DISCUSSION

¶ 19  Even though this is Respondent's first disciplinary matter to come before this Court, we must consider the serious nature of Respondent's professional misconduct. Respondent failed to represent his clients in a professional manner, he refused to respond to the Bar Association's numerous attempts to communicate with him concerning the grievances received, and he failed to present any evidence contesting the merits of the allegations at the hearing.  Respondent blamed the problems with his former clients on their own acts and not because of anything he did or did not do on their behalf. He further admitted that he had become "disenchanted" with the practice of law and that he thought he had a drinking problem at one time.  Through the trial panel's cross-examination of Respondent during the hearing, it was determined that Respondent's completion of AA was only "in his own mind." Respondent's total disregard of the seriousness for the disciplinary system is inexcusable.  Furthermore, substance abuse and becoming "disenchanted" with the practice of law are not credible excuses for unprofessional behavior.

¶ 20  The degree of discipline this Court imposes upon an attorney for misconduct is based on the particular facts and circumstances of the case.  We do not function in disciplinary proceedings as a reviewing tribunal, but rather as a licensing court acting in the exercise of our exclusive original jurisdiction.  *In re Integration of State Bar of Oklahoma,* 185 Okla. 505, 95 P.2d 113, 114 (1939).  Our responsibility is to ensure that the record is sufficient for a thorough inquiry into essential facts and for crafting the appropriate discipline.  *State ex rel. Okla. Bar Ass'n. v. Donnelly,* 848 P.2d 543 (Okla.1992).  The record in this action is sufficient for our de novo consideration.  In a disciplinary proceeding we do not punish; instead we inquire into the lawyers' continued fitness, with a view toward safeguarding the interest of the public, the courts and the legal profession.  *State ex rel. Okla. Bar Ass'n. v. Moss,* 682 P.2d 205, 207 (Okla.1983).

¶ 21  The trial panel recommended that Respondent be suspended from the practice of law for two years and one day for

professional misconduct. They further recommended that Respondent contact the Lawyers Helping Lawyers Committee for assistance and that he pay the costs of this action. The Trial Panel's findings of fact relating to Respondent's misconduct are supported by clear and convincing evidence but we conclude that the discipline recommended is insufficient here.

¶ 22 Respondent was guilty of taking money from four separate clients on numerous occasions and then failing to perform the services he had promised. He failed to cooperate with the Bar's investigative process, failed to produce subpoenaed documents, and failed to appear for hearings. Most disturbing, Respondent has failed to demonstrate that he comprehends the seriousness of his misconduct or, indeed, that his problems are of his own making. Because our responsibility is not to punish but to safeguard the interests of the public, *State ex rel. Okla. Bar Ass'n v. Adams*, 1995 OK 17 ¶ 4, 895 P.2d 701, 704, in order to do so we must demonstrate to the public that we will take all necessary means to insure that clients can rely on the competence and responsibility of the lawyers who represent them. To fulfil our responsibility here we conclude that Respondent must be disbarred.

¶ 23 This Court hereby orders that Respondent be disbarred and further orders payment of the costs of this proceeding in the amount of $2,336.55 within thirty days of the filing of this opinion.

RESPONDENT DISBARRED AND ASSESSED THE COSTS OF THESE PROCEEDINGS.

ALL JUSTICES CONCUR.